# Kane *versus* Commonwealth.

1. The word "day," as used in the 11th section of the Act of April 12th 1875, prohibiting the sale of liquors on election day, includes the whole twenty-four hours, beginning at midnight of election morning, and ending at midnight of election night.

2. Section 24, article 5, of the new constitution, which provides for a writ of error in criminal cases, does not change the rule that in such cases the jury are judges of the law as well as the facts.

3. The jury having the power, have the right to give a verdict contrary to the instructions of the court upon the law. No court should give a binding instruction to a jury, which they are powerless to enforce by granting a new trial if it should be disregarded. They may present to them the obvious considerations which should induce them to receive and follow their instructions, but beyond this they have no right to go. The argument in favor of their taking the law from the court is addressed very properly *ad verecundiam*. The court is appointed to instruct them, and their opinion is the best evidence of what the law is.

4. The power of the jury to judge of the law in a criminal case is one of the most valuable securities guaranteed by the Bill of Rights.

March 26th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Error to the Court of Quarter Sessions of *Montgomery county*: Of January Term 1879, No. 28.

Francis Kane, who kept a tavern in Norristown, was indicted

[Kane *v.* Commonwealth.]

for selling liquor on election day, in violation of section 11 of the Act of April 12th 1875, Pamph. L. 42, which provides:

" It shall not be lawful for any person, with or without a license, to sell to any person any intoxicating drink on any day on which elections are now required to be held."

The defendant pleaded "Not guilty."

At the trial it appeared that the liquor was sold in the evening of election day, after the polls were closed, and it was contended that the sale of liquor, as a beverage, after the election was over, by a licensed vender, was not a misdemeanor under the statute.

Among other points, the defendant submitted the following:

" The jury are the judges of the law and the fact;" to which the court answered: "We decline to affirm this point, and as to it refer to the general charge."

In the general charge, the court, Ross, P. J., inter alia, said:

" The defendant is a licensed vendor, and keeps and maintains a hotel in this borough. He does not deny the sale, and it appears, from the evidence of a witness who was present at a former trial, that he admitted, when he was a witness, that he did sell after the polls closed. Is a sale under such circumstances a violation of the laws regulating the sale of liquor? [I charge you, as matter of law, distinctly and positively, that any sale of liquor made upon the day upon which elections are held, is a misdemeanor under the Act of April 12th 1875, Pamph. L. 42, sec. 11; and that the word 'day,' as used in that section, applies to the whole twenty-four hours, beginning at midnight of election morning and ending at midnight of election night.] The law recognises no fractions of a day. That this was the intention of the legislature is clearly shown by the Act of March 13th 1872, Pamph. L. 24. That law prohibited a sale during the hours while the election *was in progress.* Experience proved that a sale before, and particularly a sale after, the polls closed, was as demoralizing as a sale while the election was being held, and hence the legislature extended the prohibitory period to the entire day of twenty-four hours. Therefore, I repeat, a sale, in those twenty-four hours, of liquor as a beverage is a misdemeanor. But it is urged that the Act of 1872 is not repealed by the Act of 1875. If not repealed, it is supplied, extended and enforced by that act; and a defendant who sells liquor on election day, as I have defined it, as a beverage, cannot shelter himself under the Act of 1872. 　*　*　*

" You have been asked to disregard the charge of the court as to the law, and you have been told that you, and you alone, are the judges, in a criminal case, of the law as well as of the facts. [You are instructed by the senior counsel for the defendant that the court can only express an opinion as to what the law is, but that this opinion does not bind you. Now, it is well known that doctrine was one that I rigidly enforced, against, in many instances, the pro-

[Kane *v.* Commonwealth.]

test of learned counsel.   But I believed it to be grafted in our system of jurisprudence, and I felt a jealous anxiety to preserve the rights of the citizen and the jury from judicial domination, usurpation or dictation.   When a defendant had no remedy after conviction, save a motion for a new trial or arrest of judgment, based upon errors of law, before the same judge who committed such alleged errors, the doctrine was wise and right.   But when the new constitution, and the legislation in pursuance of it, gave defendants in a criminal court writs of error, the reason which led to the adoption of the doctrine ceased, and the doctrine no longer exists.]   It is very recently, in the case of Commonwealth *v.* Blasius Pistorius, that I charged the jury they must receive and be guided by the law of homicide as declared by the court.   The defendant was convicted of murder in the first degree.   This instruction was assigned as error, but the judgment was not reversed on that ground.

"You are the exclusive judges of the facts; they are for you alone.   The law is for the court, and you will be governed by it, or you will not, as you have sworn to do, try the case 'by the law and the evidence.'   I do not assert that I am infallible.   It is human to err, but it is not for you to declare my error.   If I err, I am glad to know that I can be corrected, and the defendant protected, in a higher tribunal.

"If, then, you believe the defendant here sold liquor during the twenty-four hours of the day upon which the election was held, though not in progress at the time of the sale, your verdict should be guilty.   If you believe he did not thus sell, or have a reasonable doubt whether he did or not, your verdict will be not guilty."

The jury returned a verdict of "Guilty," when defendant took this writ, among his assignments of error being the answer to the above point and the foregoing portions of the charge embraced in brackets.

*George N. Corson* and *George W. Bush*, for plaintiff in error. —We admit that the best evidence of what is the law is what the court declares it to be, but we insist that the jury are the ultimate judges of the law and the facts in every criminal case, and this court has so decided since the adoption of the new constitution, in Hutchinson *v.* Commonwealth, 1 Norris 478.

The day on which elections are required to be held is from 7 o'clock A. M. to 7 o'clock P. M.   No man can vote before or after that hour.   No other portion of the twenty-four hours was election day, and therefore no law was violated by the defendant.

*J. Wright Apple*, for the Commonwealth.

Chief Justice SHARSWOOD delivered the opinion of the court, May 5th 1879.

[Kane *v.* Commonwealth.]

None of the specifications of error are sustained except the fourth and ninth—the refusal of the court to charge as requested in the third point—and the instruction in the charge on the same subject. We have no doubt that the court were right that the word " day," as used in the eleventh section of the Act of April 12th 1875, Pamph. L. 42, includes the whole twenty-four hours of the day upon which an election is held.

We are of opinion that the learned judge committed an error in declining to affirm the defendant's third point, that the jury in the case were judges of the law and the facts. He admits that the law was as stated in the point until the Constitution of 1873, and the legislation in pursuance of it, gave the defendant in criminal cases a writ of error to the Supreme Court. We cannot agree that in consequence of these provisions the reason which led to the adoption of the doctrine ceased—and that it has ceased therefore to be the rule.

I do not propose an elaborate examination of the question. I find it done to my hand in a very learned and exhaustive opinion of Mr. Justice Hall, of the Supreme Court of Vermont, in the State *v.* Croteau, 23 Vt. 14, who traces the doctrine historically, and cites and comments upon all the cases, both English and American. There is a great variety of opinion in the courts of the United States and of the several states. While all concede that under the provisions of the Bill of Rights no man shall be twice put in jeopardy of life or limb' for the same offence, that when the jury find in favor of the prisoner a verdict of not guilty it is final, it not being in the power of the court to grant a new trial on the motion of the Commonwealth and against the prisoner's consent, or of any higher court to reverse the judgment—it has been strongly contended that though the jury have the power they have not the right to give a verdict contrary to the instruction of the court upon the law; in other words that to do so would be a breach of their duty and a violation of their oath. The distinction between power and right, whatever may be its value in ethics, in law is very shadowy and unsubstantial. He who has legal power to do anything has the legal right. No court should give a binding instruction to a jury which they are powerless to enforce by granting a new trial if it should be disregarded. They may present to them the obvious considerations which should induce them to receive and follow their instruction, but beyond this they have no right to go. The argument in favor of their taking the law from the court is addressed very properly *ad verecundiam.* The court is appointed to instruct them and their opinion is the best evidence of what the law is. For my part I consider the following passage from the charge of Mr. Justice Baldwin in the United States *v.* Wilson, Baldwin 99, as a model to be followed by other judges when called on to instruct the jury upon the subject. " We have

[Kane *v.* Commonwealth.]

thus stated to you the law of this case under the solemn duties and obligations imposed on us, under the clear conviction that in doing so we have presented to you the true test by which you will apply the evidence to the case; but you will distinctly understand that you are the judges both of the law and fact in a criminal case, and are not bound by the opinion of the court; you may judge for yourselves, and if you should feel it your duty to differ from us, you must find your verdict accordingly. At the same time it is our duty to say, that it is in perfect accordance with the spirit of our legal institutions that courts should decide questions of law and the juries of fact; the nature of the tribunal naturally leads to this division of duties, and it is better for the sake of public justice that it should be so; when the law is settled by a court there is more certainty than when done by a jury; it will be better known and more respected in public opinion. But if you are prepared to say that the law is different from what you have heard from us, you are in the exercise of a constitutional right to do so. We have only one other remark to make on this subject: by taking the law as given by the court you incur no moral responsibility; in making a rule of your own there may be some danger of a mistake."

No one acquainted with the life of the founder of this Commonwealth can entertain any doubt of his opinion or that of his friends and followers. In 1670, William Penn with George Meade, was tried under an indictment for seditiously preaching to a crowd in Grace Church street, before the Recorder of London, who charged the jury that the court was the sole judge of the question of sedition, and that all they had to do was to find whether the defendants had preache'd or not. As this was not denied, it was a binding instruction to find for the crown. The jury, however, acquitted the prisoners, and the court, considering it as a contempt, set a fine of forty marks on each of the jurors. Edward Bushel, one of them, refused to pay the fine, and being arrested, sued out a writ of habeas corpus before Lord Chief Justice Vaughan, who, without hesitation, discharged him from his illegal and arbitrary imprisonment: Vaughan's Rep. 135. In 1735, on the trial of John Peter Zenger, for a libel against the government, before Chief Justice DeLancey, of New York, Andrew Hamilton, of Pennsylvania, certainly the foremost lawyer of the colonies, in a forensic effort in defence of the prisoner, equal to that of Erskine afterwards, in the case of the Dean of St. Asaph, not only took the ground that the jury had a right to say whether the publication was a libel, but added in the most emphatic language, " I know that they (the jury) have the right, *beyond all doubt*, to determine both the law and the fact; and when they do not doubt of the law they ought to do so :" 17 State Trials 675. The jury in that case, contrary to the charge of the court, returned a verdict of not guilty. The corporation of the city of New York passed a vote of thanks to Mr. Hamilton for

*Kane & Common.*

[Polk v. Beidelman.]

.his able and eloquent defence of "the rights of mankind and of the liberty of the press," and the freedom of the city was presented to him in a gold box. When Lord Mansfield and his associates, in King *v.* Woodfall, 5 Burr. 2661, and King *v.* Shipley, 3 T. R. 428 n., undertook to enforce a similar doctrine in England, Parliament, by a declaratory statute (Mr. Fox's bill), 32 Geo. 3, chap. 60, settled the law to be that it should be competent for the jury in all cases of indictment or information for libel, to give a verdict of guilty or not guilty upon the whole matter put in issue, but that the court should, according to their discretion, give their opinion and direction in like manner as in other criminal cases. It was in view of this controversy that the framers of. the constitution of 1790, in art. 9,· sect. 7, expressly declared "that in all indictments for libel, the jury shall have a right to determine the law and the fact, under the direction of the court, as in other cases."

In the judicial system of this Commonwealth, from the earliest period to the present time, the tribunals invested with criminal jurisdiction, with few exceptions, have been composed of a majority of judges not required to be learned in the law. That this majority can overrule the president upon questions of law has never been doubted. And there is more than one case reported in our books in which they have done so and been sustained by this court. If the doctrine now contended for be sound the jury in a criminal case are absolutely bound by the opinion of the two associate judges, though contrary to their own clear conviction and that of the president.

The power of the jury to judge of the law in a criminal case is one of the most valuable securities guaranteed by the Bill of Rights. Judges may still be partial and oppressive, as well from political as personal prejudice, and when a jury are satisfied of such prejudice, it is not only their right but their duty to interpose the shield of their protection to the accused. It is as important in a republican as any other form of government, that, to use the language of the constitution of 1776, "in all prosecutions for criminal offences," a man should have a right " to a speedy public trial by an impartial jury of the country, without the unanimous consent of which jury he cannot be found guilty." The provision of the constitution of 1873, that "in all cases of felonious homicide and in such other criminal cases as may be provided for by law, the accused, after conviction and sentence, may remove the indictment, record and all proceedings to the Supreme Court for review." Art. 5, sect. 24, is evidently a very inadequate substitute for the constitutional guarantee expressly declared and re-affirmed in the same instrument: art. 1, sects. 6, 7, 9.

Judgment reversed and *venire facias de novo* awarded.