PEOPLE EX REL. ELLIOTT V. GREEN.

1. For an attorney to stop a judge of a court on the street, and use abusive language to him concerning any judicial action in a case pending before such judge, is such malconduct in office as will warrant the striking of his name from the roll of attorneys.

2. In such case it is not necessary that the indignity or insult to the judge should occur in open court, nor that it constitutes a statutory contempt of court, in order to confer on the supreme court jurisdiction to disbar therefor.

### In the Supreme Court.

THE case is stated in the opinion.

Attorney-General D. F. URMY, Mr. L. S. DIXON and Mr. L. C. ROCKWELL, for the people.

Mr. B. F. RICE and Mr. B. F. MONTGOMERY, for the respondent.

BECK, C. J. The petition of the Hon. Victor A. Elliott, judge of the district courts of the second judicial district of this state, recently filed in this court, charges the respondent, Thomas A. Green, a duly licensed attorney at law, residing in the city of Denver, with malconduct in his office as an attorney.

It charges that the respondent halted the relator as he was driving through the street with his daughter, a young lady, and addressed abusive, insulting and threatening language to him concerning his judicial action in a certain cause theretofore and still pending and undetermined in the district court of Arapahoe county, wherein the said Green was counsel for the defendants; that he accused said judge with tyranny and oppression in said cause; that said relator had procured its submission to a prejudiced judge for trial; and further, that the respondent assailed the relator with vile epithets, and threatened to expose him by publishing the said accusations in the newspapers.

Upon the filing of the foregoing petition a rule was entered herein that the respondent be cited to appear and show cause why his name should not be stricken from the roll for malconduct in office.

The respondent appeared and answered the petition, and a hearing has been had. The answer admits that the facts contained in the petition, descriptive of the respondent's alleged conduct, are substantially true as stated, but denies that he entertained the motives therein charged against him, to wit: that he intended thereby to embarrass and intimidate the relator in the discharge of his official duties as judge of said courts, or to disgrace him as a judge.

There being no traverse of the substantial allegations of fact contained in the petition, for the purpose of testing the intentions of the respondent, an issue was framed presenting the question whether the respondent's conduct and language to Judge Elliott upon the street constituted such malconduct in his office as an attorney at law as to warrant this court in striking his name from the roll.

Upon the hearing the respondent was permitted to introduce testimony in mitigation of the offense charged against him, the same matters to be considered in justification, if adjudged admissible for that purpose. Testimony was likewise produced by the relator concerning the same matters of fact mentioned by the respondent's witnesses, and subsequently the case was submitted to the court upon the briefs and arguments of counsel for the respective parties.

Upon a careful consideration and review of the whole case, we are of opinion that the respondent's course has been unreasonable and unprofessional throughout.

Reprehensible as his conduct has been, there is little doubt that a retraction of his acts and words at any time prior to the submission of the case for our judgment, accompanied by a proper apology to the district judge,

manifesting a disposition to make suitable reparation for the indignity offered him, would have caused a dismissal of this proceeding.

But the attitude and bearing of the respondent have been, as to the relator, wholly defiant. His position is that he has done nothing wrong; that his conduct was justifiable, and that no occasion exists even for an apology on his part.

He makes the further point that the offensive language complained of, having been addressed to Judge Elliott out of court, the same does not constitute a statutory contempt, and for that reason it does not warrant the respondent's disbarment.

Such being his disposition and course in the matter, it only remains for us to declare the law applicable to the facts and circumstances of the case.

The language of the statute upon the subject of striking an attorney from the roll is broad and plain. It is: "The justices of the supreme court, in open court, shall have power, at their discretion, to strike the name of any attorney or counselor at law from the roll for misconduct in his office." General Statutes, page 136, section 5. The grave and delicate responsibility imposed upon this court, by the statute, is duly appreciated. The profession of an attorney is to him of the highest importance. It comprises his regular means of subsistence. No argument, therefore, is necessary to show that the power of striking from the roll should be most judiciously exercised. The case should be clearly made out to warrant a removal from the bar, and the removal should appear to be necessary either to the maintenance of that degree of respect which is due to courts and judges, or to preserve the respectability of the legal profession itself. The power should never be arbitrarily exercised.

It may be remarked, in this connection, that the statute not only vests this court with a discretion which may be exercised, but, by implication, it enjoins a solemn duty

upon the court, which, in a proper case, *must* be exercised.

Said Chief Justice Marshall, "This discretion ought to be exercised with great moderation and judgment, but it must be exercised." *Ex parte Burr*, 9 Wheaton, p. 529.

A proper regard for the integrity of our honored profession, and for the preservation of judicial authority, requires that indignities of this character to judges, on account of rulings made in court, be summarily dealt with. Inaction under such circumstances would be a warrant for the perpetration of a similar outrage whenever an unreasonable or evil disposed lawyer might adjudge himself aggrieved by judicial action.

The necessary effect of an indecisive course in such a case would be to impair confidence and respect in judicial authority, and embarrass the administration of justice.

The law has made ample provisions for the correction of judicial errors, and law-abiding attorneys avail themselves of such remedies when occasion requires. Those otherwise disposed must suffer the consequences of an injudicious course of action.

Concerning the respondent's motives, we have his denial that his real motives were those attributed to him by the relator. It is true respondent assailed Judge Elliott upon the street with low epithets, interspersed with charges of corruption and tyranny, accompanied by threats of exposure through the newspapers, all on account of his official action in a cause still pending in the district court, and on account of a publication concerning the same which criticised the course pursued by the respondent. But Mr. Green says he did not intend thereby to embarrass or intimidate the judge in the discharge of his official duties or to disgrace him as a judge.

We fail to discover anything in the case, however, which should except it from the operation of the usual rule of determining the motives by which human conduct is actuated, viz.: That the natural and probable

consequences of every act deliberately done were intended by its author.

The respondent was afforded an opportunity to prove on the hearing, in mitigation of his alleged offense, the affirmative allegations of his answer, that the district judge had treated him in an oppressive and tyrannical manner; that he had entrapped him into the submission of the Bosco-Smith case to a prejudiced and partial judge for trial, and that the relator caused the publication in the *Tribune* of a false and libelous account of the proceeding which occurred in court on the presentation by the respondent of his protest against further action before Judge Rogers. He signally failed to sustain upon the hearing any one of these allegations.

His conduct is not palliated by the plea of sudden passion, suggested by his counsel, which was incited upon reading the newspaper article referred to, for in the first place said article was not grossly false as alleged, and the supposed wrong done the respondent by its publication was more fancied than real. In the second place, Judge Elliott had distinctly informed him before the respondent gave vent to the tirade of abuse charged, that he was in no manner responsible for its publication. However angry he may have been upon reading the article, therefore, Judge Elliott having wholly disclaimed its authorship, no pretext remained on that account for his insulting words, and although uttered under excitement thus produced, his conduct was wholly inexcusable.

The right of lawyers, in common with other persons, to criticise in a legitimate manner the conduct and rulings of judicial officers is recognized, but this right never extends to nor justifies indignities to such officers concerning proceedings in court, which indignities would properly be characterized as outrages if perpetrated upon private citizens concerning other matters.

The respondent's objection to the jurisdiction of this court in this case is, in our judgment, not well taken.

It is not necessary that the indignity or insult to a judge should occur in open court, nor that it constitute a statutory contempt of court, in order to confer on this court jurisdiction to disbar therefor.

Bearing upon this proposition the views of Mr. Justice Field are in point: " The obligation which attorneys impliedly assume, if they do not by express declaration take upon themselves, when they are admitted to the bar, is not merely to be obedient to the constitution and laws, but to maintain at all times the respect due courts of justice and judicial officers. This obligation is not discharged by merely observing the rules of courteous demeanor in open court, but it includes abstaining out of court from all insulting language and offensive conduct toward the judges personally for their judicial acts. * * * Whatever may be thought, in such a case, of the power to punish for contempt, there can be no doubt of the existence of a power to strike the offending attorney from the roll." *Bradley v. Fisher*, 13 Wall. 335.

Chief Justice Sharswood, of Pennsylvania, is equally positive upon the point. Says he: " No question can be made of the power of a court to strike a member of the bar from the roll for official misconduct in or out of court." *Ex parte Steinman*, 95 Pa. St. 220.

To the same effect are the views of Chief Justice English: " The power of the court to punish for contempt by fine and imprisonment is one thing, and its power to strike an attorney from the roll is another and distinct thing, although the misconduct for which an attorney may be disbarred may in some instances involve a contempt of court." *Beene v. The State*, 22 Ark. 151.

The *status* of the case then is, that the respondent has been guilty of conduct toward the relator, on account of the latter's judicial action in a cause pending in the district court, which warrants his disbarment, and he has produced no testimony which either justifies or mitigates his offense. This showing is greatly to be regretted, for

the respondent is a man in advanced years, an attorney of considerable practice and experience, and one whose demeanor in other courts appears to have been polite and respectful. To this effect is the testimony of Judge Hallett, of the United States district court, and of ex-Judge Dawson, late judge of the superior court of Denver. We may add, also, that the respondent's deportment in this court has always been exemplary. It is probable, therefore, that his conduct in the present instance has been the result of passion and of an unreasonable rather than a vicious disposition, when acting under excitement.

However this may be, his defiant attitude in this case, and his persistent attempt to justify conduct which is indefensible, leaves no alternative, in view of the law and the evidence, but to adjudge him guilty of malconduct in his office as an attorney. In consideration of his age and standing, however, we are disposed to deal as leniently with him as may be consistent with the maintenance of judicial and professional honor and independence in this state.

Whether or not this leniency shall be exercised, and how soon, must depend, to a great extent, on the respondent himself. Section 7, chapter VI, of the General Statutes, makes provision for restoring to the bar any attorney whose name may have been stricken from the roll by order of the supreme court.

The judgment of the court is, that the name of the respondent, Thomas A. Green, be stricken from the roll of attorneys.

*Rule made absolute.*