## In the Matter of the Adjudication of Rossiter.

*Attorney and client—Advice to client—Constitutional privilege —Contempt of court.*

An attorney, who in good faith advises his client to claim his constitutional privilege and refuse to testify in a criminal proceeding, on the ground that it might incriminate him, is not guilty of

contempt of court. An attorney is bound to act to his client with the most scrupulous good faith and fidelity, and to exercise in the course of his employment that reasonable care and diligence which is rightfully exercised by attorneys. There is a firmly established presumption in favor of the sincerity of an attorney, authorized to act for any client he professes to represent. ·

Where a probability of incrimination reasonably existed, the attorney was justified in advising his client that he could refuse to testify. He was not guilty of contempt of court in protecting the interests of his client, by informing him of his constitutional privileges, and counselling him in regard thereto.

Argued October 8, 1924. Appeal, No. 22, April T., 1925, by respondent, from order of Q. S. Erie Co., Feb. Sessions, 1924, No. 161, adjudging S. Y. Rossiter guilty of contempt of court. Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Reversed.

Rule to show cause why S. Y. Rossiter, Esq., should not be adjudged guilty of contempt in the obstruction of justice. Before HIRT, J.

The facts are stated in the opinion of the Superior Court.

The court adjudged the respondent to be guilty of contempt of court and sentenced him to pay a fine of one thousand dollars to the Commonwealth for the use of the Erie County Law Library. Respondent appealed.

*Error assigned* was the sentence of the court.

*S. Y. Rossiter,* and with him *Albert Thomas,* for appellant.—The attorney was not guilty of contempt in advising his client to avail himself of his constitutional privilege: Oswald on Contempt, 54; 9 Foster, 280, 46 N. H. 200; Silliman v. Whitmer, 173 Pa. 401; Ex parte Fisk, 113 U. S. 715, 28 Law Ed. 1116; Com. ex rel. Keeley v. the Keeper of the Prison, 23 W. N. C. 193; Ex parte Irvine, 74 Fed. 954; Cressy v. Hall, 148 S. W. 914, 41 L. R. A. N. S. 478; Oswald on Contempt, 21 B;

Rapalye on Contempt, B 121; Ex parte Steinman and Hensel, 95 Pa. 228; Jones' Case, 2 D. R. 538; In Re, Noyes; In Re, Geary; In Re, Wood; In Re, Frost, 121 Fed. 209.

*M. Levant Davis,* District Attorney, for appellee, cited: Passmore Williamson's Case, 26 Pa. 20; 1 Wharton Criminal Evidence, Tenth Ed., Section 465; Russell on Crimes, Volume 1, page 182; Com. v. Reynolds, 14 Gray (Mass.) 87, 74 American Decisions 665; 40 Cyc. 2547; Com. v. Newton, 1 Grant 453; Goodhart v. State, 84 Conn. 60, 78 Atlantic Reporter 853.

OPINION BY ORLADY, P. J., December 13, 1924:

This appeal must be considered in connection with that of In re Adjudication of Contempt of Myers & Brei (83 Pa. Superior 383) from which case we quote: "On October 18, 1923, a young woman, Mabel Cook, by name, was run down by an automobile on a public street in the City of Erie, under circumstances that indicated criminal recklessness on the part of those responsible for the movements of the car. The accident occurred at night, and after striking the victim and knocking or dragging her for a considerable distance, the automobile continued its reckless course and did not stop to render assistance to the injured person, (Act of June 30, 1919, P. L. 678, section 23). She died shortly afterwards from the injuries so received.

One Thomas Whalen was arrested as the perpetrator of the crime and charged with (1) voluntary manslaughter, and (2) involuntary manslaughter. The appellants, Myers and Brei, were detained in custody as material witnesses, on the theory that they were present in the car with Whalen when the girl was struck.

On the trial of Whalen they were called as witnesses by the Commonwealth, but refused to testify as to their whereabouts on the afternoon and evening of October 18th, on the ground that it would tend to incriminate

them. The court below ordered them to answer, adjudged them guilty of contempt for refusing to do so and sentenced each of them to pay a fine of $200, and undergo imprisonment in the Erie County jail for the term of three months." Appeals were then taken.

After due consideration, we held that such probability reasonably existed in that case that the appellants were justified in claiming their privilege not to testify against themselves.

The question involved in this case is fairly stated, "does an attorney-at-law obstruct justice and become guilty of contempt of court, who in good faith conscientiously instructs, advises or suggests to witnesses, by whom he has been duly retained and who look to him to protect them, that they claim their constitutional privilege (article I, section 9) and refuse to testify on the grounds that their testimony may tend to incriminate them when that claim is legally well founded."

It appears by this record that Mr. Rossiter, the appellant, was the regular employed attorney of Thomas Whalen, the defendant then on trial, and of the two witnesses, Myers and Brei, who, acting under his advice as their attorney, refused to testify, for the reason that their answers would tend to incriminate them. The relation of attorney and client was not challenged or its good faith questioned in either case. Having disposed of the right of the two witnesses to refuse to testify, we now have presented the right of their regularly employed counsel to advise them to withhold their testimony. A rule was taken on the defendant to show cause why he should not be adjudged guilty of contempt of court for the obstruction of justice in the case of Thomas Whalen, and the district attorney was appointed amicus curiae to conduct the proceeding on behalf of the trial judge.

In the answer as filed by Mr. Rossiter, he denied, that by words or acts he intended to obstruct justice in the case then on trial, and averred that his conduct was courteous and in due respect for the court; that he advised

and suggested to Brei and Myers to claim their privilege with respect to matters relating to the afternoon and evening of October 18, 1923, for the reason that in his opinion, their testimony in regard thereto might tend to incriminate them; that this opinion was based upon a knowledge of facts related to him in his confidential capacity as attorney for Brei and Myers; that for his personal protection he consulted with two prominent attorneys of the Erie County bar, whose opinions concurred in the advice he had given, and that at all times his conduct in court was in good faith; that he honestly and sincerely believed that the witnesses were justified in claiming their privilege on the ground as stated.

After answer filed and hearing had, the court filed a written opinion, which concluded, "The issue of the rule in this case was not an afterthought. It was entered before the verdict of the jury in the Whalen case, and in the midst of the Commonwealth's case. It was issued upon the conviction that respondent in advising the witnesses to disregard rulings of this court was obstructing the administration of justice and this conviction has persisted." The trial judge ordered that S. Y. Rossiter, the respondent, be adjudged guilty of contempt for misdemeanor in the presence of the court in the trial of Commonwealth v. Whalen, thereby obstructing the administration of justice in that case; the same day sentenced Mr. Rossiter to pay a fine of $1,000 to the Commonwealth (for use of the Erie County Law Library) together with the costs within thirty days from that date. To which decree an exception was allowed and this appeal followed.

Having held that the witnesses in this case were not guilty of contempt of court, everything said by this court (KELLER, J., in Brei and Myers Appeal) applies with special force to that of the attorney who conducted the defense. Under his oath he was required to behave himself within the court according to the best of his learning and ability, with all good fidelity as well to the

court as to his client.   He was justified in counseling
his client at every step and stage of the proceeding.   It
would be inconsistent with justice to hold that the wit-
ness acting under the direct advice of his counsel was
not in contempt in refusing to answer for the reason
that his testimony might tend to incriminate him, and
then hold that the counsel giving the advice in good
faith would be guilty of contempt in the same proceed-
ing.   He was bound to act to his client with the most
scrupulous good faith and fidelity, and to exercise in the
course of his employment that reasonable care and dili-
gence which is rightfully exercised by attorneys.   There
is a firmly established presumption in favor of the sin-
cerity of an attorney authorized to act for any client he
professes to represent, and in this case both attorney and
client averred that that relation existed.   The privilege
extends to the disclosure of any fact which may consti-
tute an essential link by which guilt may be established,
although a particular fact might not indicate any crime.
The law applicable to claiming the privilege by a wit-
ness is so convincingly considered in Judge KELLER's
opinion that it is not necessary to repeat it, and all that
is there said applies with as great force to the attorney
advising the conduct of the witnesses.

In the early stages of the trial there was some mis-
understanding as to who should claim the privilege,
whether it should be by counsel or by the witness, but the
record clearly shows that the counsel adopted the sug-
gestion of the court and advised his clients that it was
their personal duty to claim the privilege.   The cases are
so interwoven that the one controls the other, and we
make the same order in this case as in that.   The authori-
ties referred to in that case rightfully apply to this.

After full consideration, we are of the opinion that
such probability reasonably existed in this case that the
appellant was justified in advising his clients that they
could claim their privilege and refuse to testify.

The assignments of error are sustained and the judg-
ment is reversed.