Commonwealth *v.* Lofton, Appellant.

274

Argued January 16, 1957.   Before JONES, C. J.,
BELL, CHIDSEY, MUSMANNO, JONES and COHEN, JJ.

*Edwin P. Rome,* for appellant.

*Thomas M. Reed,* Assistant District Attorney, with
him *Victor H. Blanc,* District Attorney and *James N.
Lafferty,* First Assistant District Attorney, for appel-
lee.

OPINION BY MR. CHIEF JUSTICE JONES, June 6, 1957:
This appeal is from a judgment of sentence for al-
leged contempt growing out of the fifth trial of Aaron
Turner for murder which is the subject of our decision
in *Commonwealth v. Turner* at p. 239 ante.  Most, if
not all, of the substantive and procedural facts material
to the disposition of the instant appeal are set forth in
the Turner opinion in detail.   Some will necessarily
have to be repeated here for a proper understanding of
the issue.

At the Turner trial, the Commonwealth called Clarence Lofton, the present appellant, as a witness for the prosecution. Lofton had also been indicted for the same felonious homicide but had entered a plea of guilty and was sentenced to life imprisonment. He had not testified against Turner at the latter's first trial on September 26, 1946, nor against Jasper Johnson, the third indictee for the same killing, at his trial on January 27, 1947. Turner and Johnson, both of whom pleaded not guilty, were convicted of murder in the first degree with penalty fixed at death. Their convictions were based on confessions which the Supreme Court of the United States later invalidated upon a review of Turner's trial: see 338 U.S. 62; also, *Johnson v. Pennsylvania*, 340 U.S. 881. After Johnson's conviction, Lofton, on January 31, 1947, withdrew his plea of not guilty and entered a plea of guilty and received a sentence of life imprisonment on the recommendation of the district attorney.

Thereafter, at the subsequent retrials of Turner and Johnson, the Commonwealth, with the confessions eliminated as evidence, called Lofton, who was then serving his life sentence in the Eastern Pennsylvania State Penitentiary, as a witness for the prosecution. In addition to having Lofton thus testify at Turner's second and third trials, he was also produced as a witness for the Commonwealth at Turner's fourth trial, but on that occasion he flatly refused to testify against the defendant. Subsequent to the fourth Turner trial but before the court en banc had passed upon the defendant's motions in arrest of judgment and for a new trial (Turner having again been convicted), Lofton made a formal affidavit at the penitentiary in which he recanted his prior testimony against the defendant and disclaimed any knowledge that Turner had had any part in the felonious homicide for which he had been

indicted, tried and convicted. This affidavit, which had been notarized before a prison official, was filed with the trial court in support of the defendant's after-verdict motions then pending. A new trial was granted but solely because of improper remarks by the district attorney, within the hearing of the jury, relative to the defendant's three prior convictions.

At the ensuing fifth trial, the district attorney again called Lofton as a witness for the Commonwealth, although he knew full well of Lofton's steadfast refusal to testify against Turner at the fourth trial, his formal recantation affidavit, which had been filed with the court, and his persistently announced refusal to testify against Turner. And, as had been conclusively forecast, Lofton refused to testify to the effect which the district attorney strove to get him to do, and the trial judge twice held him in contempt for his refusal. This happened at the morning session of Turner's trial on *February 19, 1954.* The next day the trial terminated with the jury's verdict finding Turner guilty of murder in the first degree with penalty fixed at life imprisonment. It was not until *August 22, 1956,* however, that the trial judge called Lofton before him for sentence for the adjudged contempts. Lofton being unrepresented by counsel, the court requested Edwin P. Rome, Esq. (then present for the sentencing of his client, Turner) to represent Lofton in respect of his being sentenced for contempt. Rome promptly assumed the responsibility. The court thereupon imposed sentence on Lofton for the contempts whereof he had been adjudged guilty two and one-half years before. In support of its action, the court, approximately three months later, filed an opinion which, to say the least, it is difficult to correlate with what had actually transpired at the Turner trial while Lofton was on the witness stand. Lofton's appointed counsel duly appealed to this court

the judgment of sentence for contempt which the court below had imposed.

In holding Lofton for contempt at the trial, the court gave as its sole reason, for so doing, the witness's refusal to answer questions. The record makes this plain beyond quibble. Thus, at pp. 151a-152a of the Turner record on appeal, the following appears, Lofton being the witness:

"By The Court: . . .

"Q. Then you refuse to answer any questions asked you by the District Attorney?

"A. Yes, sir, I do.

"The Court: We hold you in contempt of Court.

"The Witness: Yes, sir.

"The Court: And the record of the answers and failure to answer is a record upon which we hold this witness in contempt."

The second adjudication appears at pp. 177a-178a of the record (Lofton still being the witness), as follows:

"The Court: Well, we have already held you in contempt.

"The Witness: Yes, sir.

"The Court: For failure to answer the questions that were directed to you. We direct you again to answer the questions.

"The Witness: Yes, sir. Your Honor, I will admit I was held in contempt before.

"Mr. Rome [defendant Turner's counsel]: Sir, on behalf of the defense I would object to Your Honor's holding this witness in contempt in this fashion at this time.

"The Court: Well, that objection is overruled.

"Mr. Rome: Exception, sir.

"The Court: We hold the witness in contempt of Court for failure to answer the questions."

Strange as it may seem, the reasons so unmistakably stated contemporaneously by the court for its action had fallen into utter desuetude by the time (two and one-half years after the trial) that the judge imposed sentence upon Lofton for contempt. At that time the court, in express abandonment of its earlier ground for its action in holding Lofton for contempt, said,— "It was not the fact that the witness desired not to testify. That had nothing to do with it. It was the manner in which he showed contempt for counsel and for the Court, and for the Institution of the Court." This belatedly expressed idea, the court enlarged upon in its written opinion filed some three months after the sentence for contempt had been imposed and subsequent to Lofton's appeal to this court from the judgment of sentence. The opinion contains a diatribe against Lofton for his conduct at trial for which there is not the slightest basis in the record. Thus, it states that Lofton's manner was "spiteful" and "vicious"; that he "insulted the Court and disrupted the orderly process of trial"; and that the "contempt consisted not only of the refusal to testify or answer questions, but of loud and vicious domination of the trial of the most reprehensible nature, sufficient to shock [the court] most completely."

In his brief, counsel states that Lofton was far from being loud and abusive and cites in support thereof record indications of compellingly persuasive force. Near the outset of Lofton's testimony the district attorney complained, "I can hardly hear you"; a little later on, "I didn't get your answer, Mr. Lofton"; and, again, "I can't hear you." Two of these occasions the court obviously observed, for it repeated the witness's answers for the district attorney's hearing. Not once during the entire time Lofton was on the witness stand did the judge direct him to lower his voice or cease any

loud or boisterous conduct. On the contrary, the record shows the witness to have been respectful. He uniformly addressed the judge as "Sir" or "Your Honor" or referred to him as "the Court" and, with like respect, he addressed the district attorney as "Sir" or "Mr. Panati". And, it may also be noted in this connection, that the court did not at any time admonish Lofton to change his manner or attitude toward the court.

If Lofton's conduct at the Turner trial was as bad as the opinion for the court now tries to make it appear to have been, it merited condign punishment promptly imposed, i.e., immediately after the jury in the Turner case had returned its verdict and had been discharged. For the court to wait two and one-half years to punish for a contempt committed in its presence which it terms "flagrant" and of such "reprehensible nature" as to shock the court "most completely" serves neither to vindicate the majesty of the law nor to uphold the dignity of the court.

It is of course quite understandable why the court, after an overly-long continued opportunity for reflection, apparently came to the conclusion that it could not hold Lofton for contempt for having refused to answer the questions which the district attorney was propounding. What the district attorney was endeavoring to do was to get Lofton to admit having testified against Turner at former trials to an effect which the witness had since completely repudiated on oath as having been false. All that Lofton refused to testify to was what he then deposed had been untrue. Actually, he was quite willing to, and did, testify under the district attorney's own examination in keeping with his affidavit that he had no knowledge of any participation by Turner in the homicide. At one point in Lofton's testimony the court appeared to have understood the witness's situation when it said,—"This man has been

called as a witness. He says that this paper is the truth and he says he wants to tell the truth. In other words, he wants to testify to those facts. Isn't it fair to him to permit him now to read this to him and ask him if these statements are true and give him a chance to testify to it before we rule on the other question? I feel this way. Here is a witness who is on the witness stand. He has refused to answer [the district attorney's] questions, true, and I have held him in contempt, and that is a matter that I will have to take care of later." How, possibly, could a witness be held in contempt for refusing to testify to what he insists is untrue and is willing to testify to what he affirms to be the truth.

Lofton, although unlettered and at the time uncounseled, handled himself remarkably well on the witness stand in resisting the district attorney's persistent efforts to get him to admit that he had testified against Turner in former trials in accordance with the testimony the district attorney was reading to him. The district attorney harrassed and even humiliated him in an ostensible effort to secure from him testimony which the district attorney well knew the witness had repudiated as being false and which, as he had repeatedly confirmed to the district attorney, he would not again testify to but that he would testify to the truth. The trial judge did nothing to protect the witness in his right to insist upon telling what to him was then nothing but the truth. The court not only tolerated but virtually condoned the district attorney's insistent goading of the witness in aid of the prosecution's devious stratagem for getting before the jury the witness's repudiated testimony of former trials in order to induce a jury's verdict of the defendant's guilt. If any of the witness's refusals to testify, in the way the district attorney was trying to force him to do, were "loudly

shouted", it was done out of the exasperation to which the court's erroneous and compliant rulings and the district attorney's loaded questions had driven the witness.

While it is entirely unnecessary to our decision in this matter, we take occasion to point out that the judgment of contempt is invalid for a still further reason. The court, on its own showing, was moved, in part, to sentence Lofton for contempt for what it had professedly heard from the judge who had presided at Turner's fourth trial concerning Lofton's refusal to testify at that time. Thus, what had allegedly happened at a former trial, presided over by another judge, was availed of by the court as basis in part for sentencing Lofton for contempt at the latest trial. The rule has long been established in this State that one court cannot punish for a contempt committed before another court. In 1791, our own court, upon being moved to issue an attachment for a contempt in disobeying the process of an inferior court (the whole record being removed here by *certiorari*), said that ". . . they knew of no case where one Court punished a contempt offered to another Court, and would not carry the system of punishing by attachments further than they were clearly warranted by practice and adjudged cases": *Lessee of John Penn, Jr. v. Michael Messinger*, 1 Yeates 2. In the famous *Passmore Williamson's Case*, 26 Pa. 9, 18 (1855), Mr. Justice JEREMIAH S. BLACK, speaking for this court, said,—"All courts have this power [to punish for contempt], and must necessarily have it; otherwise they could not protect themselves from insult, or enforce obedience to their process. Without it, they would be utterly powerless. The authority to deal with an offender of this class belongs exclusively to the court in which the offence is committed; and no other court, not even the

highest, can interfere with its exercise, either by writ of error, *mandamus*, or *habeas corpus*." And, in *Commonwealth v. Shecter*, 250 Pa. 282, 289-290, 95 A. 468, it was recognized on the authority of the above-cited cases that "It is settled law that each court is the exclusive judge of contempts committed against its process."[1]

We have not failed to note the lower court's trite observation that "It is most difficult to peruse a 'cold record' and feel the tension and spirit of a trial." The record before us appears to have been exceptionally well reported and is most revealing. Nor are we impressed with the court's further statement that "In the instant record no careful reading can begin to produce the spiteful, vicious manner in which Clarence Lofton insulted the court and disrupted the orderly process of trial." When a matter is brought to this court on appeal, it necessarily comes before us on a printed record, and the litigants are entitled to have their rights adjudicated on the basis of what *the record* shows and not upon what the court below may intimate or suggest is not shown. If the record in this case is in any way deficient, it is the fault of the trial judge for not hav-

---

[1] The reference in the quotation from *Passmore Williamson's Case*, supra, to the fact that a writ of error did not lie to a judgment for contempt was because there was no appeal at common law from such a judgment. Although there is no statutory provision for an appeal from a judgment of contempt, appellate review has been afforded by this court: see *Messmore's Estate*, 293 Pa. 63, 71-73, 141 A. 724. However, appeals of contempts committed in the criminal courts have been entertained by the Superior Court (see, e.g., *Levine Appeal*, 170 Pa. Superior Ct. 579, 88 A. 104) by analogy to that court's appellate jurisdiction of criminal matters. By the same token, the instant judgment of contempt having arisen out of a trial for murder, which was reviewable by us, jurisdiction of the appeal from the judgment of contempt was properly in this court.

ing had it truly and fully reflect all material and important trial matters. Of course, the trial judge may have found the record "cold" when he came to write his opinion supporting the judgment of contempt two years and nine months after the alleged courtroom occurrences, especially when the witness's refusal to answer the district attorney's questions was no longer to be the basis of the contempt adjudication. We find the record sufficiently accurate and informative to disclose that the witness was unjustly held for contempt.

Judgment reversed and sentence for contempt vacated.