Aungst Contempt Case.

Argued April 18, 1963. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

*W. J. Krencewicz,* for appellants.

*Calvin J. Friedberg,* with him *Hicks, Williamson,
Friedberg, Jones & McKenna,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, July 15, 1963:

This is an appeal from an order of the Court of
Common Pleas of Schuylkill County (one judge dis-
senting) denying (without prejudice) the petition of
nineteen members of the bar of that court (appellants)
for a rule to show cause why the respondents (appel-
lees) should not be adjudged in contempt of court.
The matter below was entirely ex parte; appellees
became participants in this proceeding only before
this Court upon receipt of appellants' briefs on appeal.

There is no dispute as to the facts material to
this appeal. On February 14, 1961, thirteen members
of the bar of Schuylkill County, as officers of that
court (later joined by six additional lawyers), pre-

sented a written statement to the court en banc, reciting that respondents (officers and agents of a radio station) for more than a year had been making radio broadcasts which "vigorously pursued a course of conduct to influence those, past and present, who serve as members of the Jury . . . and to illegally influence those who may subsequently serve as members of a jury. . . ." The statement asserted also that respondents' conduct constituted "what is commonly known as a 'Jury Fix' " and that the broadcasts were "not confined to argument and persuasion but also to almost daily threats of intimidation as to people who serve as members of the Jury and to castigate and hold them up to public ridicule in the event that their verdicts were not as suggested . . ." by the broadcasts. Members of the juries were characterized as "bums, incompetents and delinquents." The statement further recited that the broadcasts "repeatedly castigated all of the Judges" of the court below, "in an apparent endeavor to intimidate the court into handing down sentences, opinions and handling the business of the court in accordance with the ideas, suggestions and opinions . . ." of the radio station.

The written statement concluded with a request to the court to give consideration to a rule to show cause why the respondents should not answer to the court for these charges of contempt.

On February 20, 1961, the nineteen lawyers presented to the court below a formal sworn petition repeating in essence their prior representations and further alleging that respondents "have almost daily committed contempts of court by their unwarranted and criminal accusations [as to all four judges of the court] that certainly and positively affect the proper administration of justice. . . ."[1]

---

[1] The petition also alleged, inter alia, that respondents "made an unmitigated attack on one Judge accusing the Judge, in effect,

Following presentation of the petition, the court took no immediate action upon it. In fact, the petition apparently remained, without disposition, in the hands of the judge to whom it was presented. Almost eight months later, on October 5, 1961, the complaining lawyers placed the matter upon the current hearing list, and the president judge assigned the matter to himself. There it remained without hearing or disposition until October 22, 1962, twenty months after the petition had been initially presented, when the court ordered the petition "denied without prejudice."

On January 4, 1963, the court below filed the following opinion: "The matter is now on appeal with the Supreme Court of Pennsylvania, appeal having been filed December 2, 1962. It is the opinion of the majority of the Court that the Petition, as filed and as amended, is lacking in form and content to warrant the relief prayed for, to wit: Rule for Contempt of Court. . . ." (Citations omitted.)

Although the record[2] lacks sufficient completeness and fails as an adequate basis for determination of the issues sought to be adjudicated by appellants—but rejected by the court below without hearing, it does, however, suggest the apparent existence of a local

---

of being in a criminal conspiracy with the keepers of bawdy houses and severely castigated the Judge because of his parole of the defendant . . . and without justification made a vicious attack upon another Judge . . . by saying in effect that that Judge was in a criminal conspiracy with gamblers and violators of the liquor laws and that said Judge by his modest sentence and sentences was giving to those defendants 'A mere slap on the wrist and an invitation to go out and commit further crime.' That as to another Judge . . . they made the accusation that that Judge was engaging in a criminal conspiracy as to jurors."

[2] The record consists only of the lawyers' written statement dated February 14, 1961, their formal petition dated and presented February 20, 1961, the court's order of October 22, 1962, and the opinion dated January 4, 1963.

atmosphere which is detrimental to the proper administration of justice. Such a climate invites appropriate corrective action.[3] Nevertheless, it is not essential to our present determination to discuss available remedies or to decide whether the alleged conduct of the respondents constituted contempt of the court below.

The power of this Court to review a finding of contempt and to affirm, reverse or modify the order of the lower court is not disputed. We have so acted on numerous occasions and shall continue to do so. See, e.g., *Commonwealth v. Lofton*, 389 Pa. 273, 133 A. 2d 203 (1957); *Mack Appeal*, 386 Pa. 251, 126 A. 2d 679 (1956); *Messmore's Estate*, 293 Pa. 63, 141 Atl. 724 (1928). However, our appellate courts have found it necessary in only one class of cases to review the failure of a lower court to enter an order of contempt— where there has been direct disobedience of, or refusal to comply with, a decree or order of that court and the court itself, upon motion or other formal request of the party directly affected by such disobedience, refuses to compel compliance or to hold the disobedient party in contempt. See *Davidyan v. Davidyan*, 333 Pa. 465, 3 A. 2d 921 (1939); *Braunschweiger's Estate*, 322 Pa. 394, 185 Atl. 753 (1936) (refusal by fiduciary to distribute); *State Grand Lodge v. Morrison*, 277 Pa. 41, 120 Atl. 769 (1923); *Ensslen Estate*, 163 Pa. Superior Ct. 246, 60 A. 2d 429 (1948) (refusal to turn over property to administratrix).

The instant proceeding is separate and independent of any other action or litigation and obviously was not instigated to enable a private litigant or interest to secure obedience or compliance with an order or decree of court previously obtained at the instance of a moving party for the latter's benefit or protection. It is

---

[3] Such action is undoubtedly available in one or more of the spheres of governmental responsibility.

not concerned with the disregard of a court decree. Its purpose is not enforcement or compliance and does not involve vindication of the authority of the court.

It is clear that the court below could determine initially whether it has been contemned. Its authority to do so is unquestioned. In a proceeding of this nature, the court below should be the primary protector of its judicial dignity and conscience, since it is the tribunal primarily concerned with maintaining its dignity and public standing as a judicial forum and is, therefore, empowered to protect itself from insult. However, its decision not to exercise that power is a choice we shall not, in this instance, disturb. We shall affirm its order, particularly since it does not determine the controversy or foreclose any rights. Our determination is necessarily limited to the facts now before us and is in no way a restriction upon our power to review contempt proceedings and to enter appropriate adjudications.

Courts of law exist primarily to adjudicate justly and expeditiously the controversies of litigants. Our courts must be responsive to current needs and give satisfaction to the causes of litigants, so that when they leave the courtroom they have reason to feel that they have been accorded a prompt and fair hearing. Respect for law and the judicial process will not be promoted by undue delays and other circumstances which offend the community's sense of propriety and otherwise fail to attract public respect and acceptance.

All realize that the judicial process, like any other human activity, requires a certain amount of time for the proper performance of its important deliberative function. Immediate determinations are not always possible, particularly in complicated and extended litigation. Rule 78[4] of this Court recognizes that in some

---

[4] Rule 78 was adopted and is enforceable under the general supervisory authority of this Court over the courts of the Commonwealth.

instances 60 days or more may be needed by a lower court to dispose of pending matters and requires that all such undisposed matters be reported to the Prothonotary of this Court with an explanation of the cause of the delay.[5] There can, however, be no acceptable reason for a delay of twenty months in acting upon a motion for rule to show cause.

The circumstances suggest the following inquiry: If the petition was so utterly without merit as the court's brief order indicated, should not the matter have been disposed of far more promptly? On the other hand, if the petition appeared to have the merit which the court's delay indicated, did it not then deserve at least some opportunity for hearing?

We may not, in light of the record presented, refrain from expressing our disapproval of the court's undue delay as well as the practice by which it was achieved.

Order affirmed.

CONCURRING AND DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

There is nothing in the record or in the facts and circumstances of this case which could even remotely justify the failure of the lower Court to promptly dispose of this petition.* That Court's delay in disposing

---

[5] The instant matter was not included in any of the monthly reports required of the responsible judge by Rule 78. Unexplained is this omission as well as his reason for the delay.

* Moreover Rule 78 of the Rules of the Supreme Court of Pennsylvania has been flagrantly, although we assume unintentionally violated. Rule 78 provides: "B. Every President Judge . . . shall report to the Prothonotary of the Supreme Court . . . on forms furnished by that officer . . . *all cases and other matters which have been submitted to* any judge or judges for decision and which have remained undisposed of for sixty (60) days or more

of this petition undoubtedly tends to impair the confidence and respect of the bar and of the public for our Courts.

By long established tradition which has been recognized by decisions of this Court, attorneys who have been admitted to practice in a Pennsylvania Court are Officers of that Court.* The purpose of the petition filed by these attorneys was to uphold and vindicate the honor, the public's confidence in, and the prestige of the Court of Common Pleas of Schuylkill County, and even more importantly, to insure the rendition of justice unhampered and uncontaminated by any outside influence. The Supreme Court is the ultimate Protector and Preserver of Justice. If a Court is collusive or if a Judge, in the face of mob hysteria or of unjustifiable attacks by powerful interests, is so timor-

after having been submitted, and explain briefly the cause of the delay as to those matters.

"C. Each monthly report shall show all cases *and other matters* so undisposed of even though previously listed. It shall also show all cases and matters listed in the last preceding report which were decided subsequently."

In accordance with this rule it is the duty of the President Judge of the Court in each Judicial District to report each month to the Prothonotary of the Supreme Court all cases *and other matters* which have been submitted to any Judge or Judges for decision and which have remained undisposed of for 60 days or more thereafter.

Furthermore, the forms submitted by the Prothonotary to each President Judge require a brief listing of *all matters* pending as aforesaid and the *"Nature of Case, Petition, Rule or Motion"*, "Date Submitted to Court", "Name of Judge", and finally, "Reason Matter Remains Undecided For Sixty (60) Days or More."

This Rule of Court and the aforesaid Form could not be clearer. Nevertheless, they have been misunderstood or deliberately violated by some Judges in the Commonwealth. There will no longer be any justification for any failure to comply with the above mentioned Rule and Form.

* *Schofield Discipline Case*, 362 Pa. 201, 66 A. 2d 675.

ous that justice is jeopardized, this Court must take appropriate action. Even a citizen who pays a tax of $1.00 or less has a right and a legal standing to challenge any alleged unlawful expenditure of public money by a public official. A fortiori, these petitioners had a right and a legal standing to present this petition.

Furthermore, under our King's Bench power of general supervision over all inferior Courts, this Court has jurisdiction and power to affirm or reverse or modify the Order of the lower Court with appropriate directions for further proceedings in that Court. While it is unnecessary to cite additional authority for such an obvious proposition, it is further supported by the Act of May 20, 1891, P. L. 101, §2, 12 P.S. §1164, and by a score of decisions which hold that this Court has power to review appeals in the nature of certiorari even when an Act of the Legislature is silent upon the right of appeal or provides that no appeal will lie from a decision of the lower Court: *Keystone Raceway Corporation v. State Harness Racing Commission*, 405 Pa. 1, 5, 6, 173 A. 2d 97; *Bell Appeal*, 396 Pa. 592, 597, 598, 152 A. 2d 731; *First Bellefonte Bank and Trust Company v. Myers*, 410 Pa. 298, 188 A. 2d 726; *Dauphin Deposit Trust Co. v. Myers*, 388 Pa. 444, 460, 462, 130 A. 2d 686.

I would hold (1) that these petitioners had a legal standing (a) to file their petition and (b) to appeal; and (2) the lower Court committed a clear abuse of discretion in denying their petition without a hearing.

I would, therefore, reverse the Order of the lower Court, and direct the lower Court to issue a rule to show cause, and thereafter to very promptly hold a hearing, and very promptly decide all the pertinent issues which are raised.