Bloom Discipline Case.

Argued September 28, 1966. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Harold R. Schmidt,* with him *Rose, Schmidt and Dixon,* for appellant.

No argument was made nor brief submitted for appellee.

OPINION PER CURIAM, November 15, 1966:

This is an appeal from an order of the Court of Quarter Sessions of Washington County, sentencing the appellant, an attorney, to pay a $100 fine for contempt of court.* At the time of the incident which led to the contempt citation, appellant was representing a recently convicted defendant and was attempting to obtain a supersedeas from the court pending an appeal.

The contempt citation is based upon the following dialogue, which took place at the time of the defendant's sentencing and which the court below found to be disrespectful:

"BY THE COURT: Mr. Bloom [appellant] just submitted to me a petition for a supersedeas. I am inter-

---

* In addition the trial judge ordered appellant to refrain from performing any acts as an attorney until the fine was paid. Later the judge granted a supersedeas pending the outcome of the present appeal.

ested to observe that in the typed portion of it, which must have been prepared prior to the sentencing ceremony, Item 5(c) reads: 'It sentenced the defendant to an unduly long imprisonment for the crimes for which he was convicted'. Does the District Attorney have any comment on this petition for supersedeas? Mr. HIRSCH: We feel that the crime is of such severity that the sentence should be begun and the supersedeas should be denied, or in the alternative, that a substantial increase in the bail be required. BY THE COURT: This is something that has always bothered me, that a man convicted by the verdict of the jury, confirmed by the court en banc, can walk out of the courtroom laughing at the law and its inability to do anything about him until a long course of proceedings has been concluded. I realize that the usual precedent is to grant these, but this has been an aggravating case, with misbehavior in the halls, trouble with the juvenile court employees, ancillary proceedings in other counties. I think I will go along with the District Attorney's proposal and refuse the writ, and do it here at 2:10 P.M., when you have all afternoon. I have written on here: 'Refused. Statement of reasons will issue', and signed by me. Mr. Coleman, take him away. (Mr. Bloom leaves side bar.)

"MR. BLOOM: Can Mr. Bottone [the defendant] remain in the courthouse for two hours, to give us an opportunity to—BY THE COURT: Mr. Bloom, that is just exactly the sort of thing that brings the practice of law into disrepute. The absolute and total absence of a vindication of the public right here. I don't know why you feel it is so necessary that this defendant of yours not even walk up to the door of the jail. MR. BLOOM: Well, if the Court please, we still have remedies to exhaust here before a final determination is made, and I do not feel it is fair for the Court to try and deprive him of those rights. BY THE COURT: Take

Mr. Bloom's statement down. We will look into your conduct subsequently, sir. I cannot say that I was particularly fond of your going to Judge Montgomery behind my back on this either. MR. BLOOM: We did not go to Judge Montgomery behind your back, your Honor.

"BY THE COURT: Just a minute. Come back here a minute, Mr. Bloom. Is it your suggestion that the Court has just committed a falsehood in open court? MR. BLOOM: If the Court please, the Court requested me to come up to side bar and then proceeded to make this a matter of open courtroom procedure. I don't quite understand the Court's motives in this. When I was requested to come to side bar, I understood that the matter would be conducted over side bar, rather than in open court. I think that is the usual reasons for going to side bar, your Honor. BY THE COURT: Well, you come to see me at 9:30 tomorrow morning [Saturday], Mr. Bloom. MR. BLOOM: If the Court please—BY THE COURT: That's all. MR. BLOOM: I'm sorry, I will be out of town tomorrow morning. BY THE COURT: You heard what I said. You come to see me at 9:30 tomorrow morning. MR. BLOOM: I'm sorry, I will be unable to make it. BY THE COURT: Get this on the record. I am telling you to be here. MR. BLOOM: I'm sorry, your Honor, I will not be able to be here."

On that same afternoon appellant and his father, also an attorney, attempted to see the trial judge in order to explain appellant's reasons for being unavailable Saturday morning. While the judge refused to speak to appellant, he did talk to his father and indicated that he would permit appellant to appear Monday rather than Saturday. Because appellant was stranded until Tuesday on the Pennsylvania Turnpike by a heavy snowstorm, the meeting was further delayed until Wednesday. However, the court's contempt cita-

tion is based solely on what transpired in the court-room on Friday.

In the exercise of our supervisory jurisdiction, this Court has the unquestioned authority to review a finding of contempt and to affirm, reverse, or modify the order of the court below, e.g., *Aungst Contempt Case,* 411 Pa. 595, 192 A. 2d 723 (1963) ; *Commonwealth v. Lofton,* 389 Pa. 273, 133 A. 2d 203 (1957) ; *Schlesinger Petition,* 367 Pa. 476, 81 A. 2d 316 (1951).

Pa. R. C. P. 205 stipulates that Pennsylvania attorneys shall observe the standards of conduct set forth in the American Bar Association's Canons of Professional Ethics. Under Canon 15: "The lawyer owes 'entire devotion to the interest of the client, warm zeal in the maintenance and defense of his rights and the exertion of his utmost learning and ability,' to the end that nothing be taken or be withheld from him, save by the rules of law, legally applied. *No fear of judicial disfavor* or public unpopularity should restrain him from the full discharge of his duty. In the judicial forum, the client is entitled to the benefit of *any and every remedy* and defense that is authorized by the law of the land, and he may expect his lawyer to assert every such remedy or defense." (Emphasis supplied.)

We believe that the appellant was attempting to fulfill his obligations under Canon 15, and that he had no intention to be disrespectful, and that neither the colloquy between the court below and appellant, nor appellant's conduct, show him to be disrespectful or guilty of contempt of court.

We have therefore concluded, under all the facts and circumstances herein, the order must be reversed and the sentence set aside.

---

CONCURRING OPINION BY MR. JUSTICE COHEN:

I completely disagree with the reasoning of the majority. Even counsel for the appellant did not see fit

to excuse or justify the remarks of the appellant by resorting to Canon 15. I see nothing in Canon 15 that permits a lawyer to indicate that the court is treating his client unfairly and depriving him of rights because the judge has refused in the exercise of his discretion to delay the imposition of a criminal sentence; nor do I see in Canon 15 any justification for counsel to publicly question the court's motives; nor do I see in Canon 15 any privilege on the part of an attorney to refuse a proper request on the part of the court without explanation.

I realize, however, that in this situation the transcribed record alone is insufficient to uphold a contempt citation. Consequently, the position taken by counsel for appellant might very well justify the action of the majority in reversing the order of the court below and setting aside the sentence for contempt. But in coming to this conclusion we might recognize that the court below which imposed the sentence did not appear or have counsel appear and that the entire appellate prosecution was unilateral. Had the lower court or counsel on his behalf appeared before us and explained the intonations and inflections used by the appellant in his remarks to the judge, or described appellant's mannerisms, and they were shown to have been rude and insulting, I might have been inclined to affirm the order of the court below.

In a letter addressed to all members of our Court and counsel for appellant, the lower court took the following position: ". . . It seems to me that we have happened upon one of the limitations of the adversary system here. I do not believe it is consistent with the duty and position of a trial judge to appear in the arena as the adversary of a member of the bar of his county. Despite the unfortunate attempts in appellant's brief to personalize this controversy, it is an impersonal one, and it would be short-sighted and unwise

for me to do anything (such as appear at the argument) which would personalize it."

I fully sympathize with the court's dilemma and join with him in recognizing that some procedure should be evolved that would protect the court in this and similar positions without forcing a judge to engage in a personalized, antagonistic, adversary proceeding against a member of the bar of his county. Lasting scars can be developed and the lower court is to be commended that it did not indulge in an activity that would have contributed to a continued antagonism between a judge and counsel.

I further appreciate the problem with which the lower court was confronted—maintaining standards of decorum, promptness and attention to duty of the practitioners before him. However, I think that on the record as presented to us and as explained only by counsel for appellant, the final determination of the majority is correct. Hence, I concur in the result.