354 A.2d 894

**COMMONWEALTH of Pennsylvania**

v.

**David CHERRY.**

**Appeal of Harold L. RANDOLPH, Esq.**

Supreme Court of Pennsylvania.

Argued Jan. 12, 1976.

Decided April 7, 1976.

Abraham J. Brem Levy, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Abraham J. Gafni, Deputy Dist. Atty., for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY and MANDERINO, JJ.

## ORDER

**PER CURIAM.**

Mr. Chief Justice Jones, Mr. Justice Eagen and Mr. Justice Pomeroy would affirm the order of the trial court. Mr. Justice O'Brien, Mr. Justice Roberts and Mr. Justice Manderino would reverse the order of the trial court. This Court being equally divided, the order of the trial court remains in effect.

Mr. Justice Pomeroy filed an Opinion in Support of Affirmance in which Mr. Chief Justice Jones and Mr. Justice Eagen joined. Mr. Justice Manderino filed an Opinion in Support of Reversal in which Mr. Justice O'Brien and Mr. Justice Roberts joined.

Mr. Justice Nix did not participate in the consideration or decision of this case.

## OPINION IN SUPPORT OF AFFIRMANCE OF THE ORDER

**POMEROY, Justice.**

In the trial below, appellant, Harold L. Randolph, Esquire, was held in contempt of court for remarks he made to the jury during his closing argument in disregard of a direction by the trial judge not to make such comments. It was the considered opinion of the trial judge and the court en banc that this conduct transcended the bounds of permissible advocacy. The opinion in opposition to affirmance of the lower court's order would reverse the finding of contempt and excuse appellant's comments as "injudicious" remarks uttered in the course of his attempt zealously to represent his client. I cannot agree, and would affirm the order of the court below.

The Code of Professional Responsibility does impose upon a lawyer the duty to represent his client zealously within the bounds of the law. See Code of Professional Responsibility, Canon 7, 42 Pa.C.S. (Effective

February 27, 1974). Since the effectiveness of our adversary system depends in large measure upon the fulfillment of this duty, lawyers must be allowed broad latitude to engage in vigorous advocacy. This latitude does not, however, provide a lawyer with a license to ignore an equally fundamental duty owed to the court. A lawyer is an officer of the court as well as an advocate of his client's cause. As such he is duty bound not to "engage in undignified or discourteous conduct which is degrading to a tribunal." Code of Professional Responsibility, DR 7–106(C)(6), EC 7–36, 42 Pa.C.S. (Effective February 27, 1974). See also ABA Standards, The Defense Function § 7.1. (1971). Such degrading conduct tends to undermine the public's confidence in the capacity of our judicial system to render objective judgments based upon a rational evaluation of properly considered evidence. While the line between zealous advocacy and engaging in discourteous conduct may be a fine one, it is a line which nevertheless must be observed if courts are to continue to adjudicate disputes in an atmosphere of trust and cooperation. In the instant case, this line has been clearly transgressed.

The standards which must govern the issuance of a contempt order have been well summarized by Chief Justice Horace Stern:

"Generally speaking, one is guilty of contempt when his conduct tends to bring the authority and administration of the law into disrespect. The right to punish for such contempt is inherent in all courts. When it is committed in its presence the court may, in punishing the offender, act of its own knowledge without further process, proof, or examination. Such power, 'although arbitrary in its nature and liable to abuse, is absolutely essential to the protection of the courts in the discharge of their functions'. *Ex Parte Terry*, 128 U.S. 289, 313, 9 S.Ct. 77, 83, 32 L.Ed. 405. It is a power 'essential to preserve their authority and to prevent

the administration of justice from falling into disre-
pute'. *Fisher v. Pace*, 336 U.S. 155, 159, 69 S.Ct. 425,
427, 93 L.Ed. 569."

*Levine Contempt Case*, 372 Pa. 612, 619, 95 A.2d 222,
225 (1953).

 In my view, the remarks which appellant made
to the jury during his closing argument clearly "tended
to bring the authority and administration of the law into
disrespect," and were therefore properly punished by the
contempt order before us. These remarks called into
question the fairness of the trial proceedings and were
calculated to appeal to the jury, not on the basis of the
evidence presented, but on the purported unfairness of
the trial they had witnessed. Arguments to the jury
based upon such an indictment of the trial proceedings
are, in my mind, manifestly improper and cannot be said
to fall within the scope of a lawyer's duty zealously to
represent his client. A lawyer must, of course, vigorous-
ly pursue appropriate procedures to challenge errors in
the proceedings; but to say that a lawyer must not allow
perceived error to go uncontested is not to condone the
misguided effort to argue the wisdom of the judge's rul-
ings to the jury.

"The obligation of the lawyer to maintain a respect-
ful attitude toward the court is 'not for the sake of the
temporary incumbent of the judicial office,' but to give
due recognition to the position held by the judge in the
administration of the law. ABA Canons of Profes-
sional Ethics No. 1 (1968). The lawyer, by his atti-
tude, communicates to the laymen in the courtroom the
professional relation which exists between judge and
lawyer. The appropriate way to challenge the judge's
decisions is through appropriate procedural devices,
including objections and appeals designed for that pur-
pose, not by seeking to impress the client by a show of
belligerency which exceeds the need to make a record
of what he believes is error in the case. A restrained,

respectful attitude on the part of each advocate toward the other helps reinforce the concept that the adversary system, although based on contention, is a mechanism which depends upon evidence and the rule of law, not vituperation or personalities. See, e. g., *In re Schofield*, 362 Pa. 201, 66 A.2d 675 (1949); Drinker, Legal Ethics 69–70 (1953)."

ABA Standards, The Defense Function § 7.1 at 258 (Commentary) (Tentative Draft 1970).

It is for these reasons that the order of contempt entered below should be affirmed.

JONES, C. J., and EAGEN, J., join in this opinion.

## OPINION IN SUPPORT OF REVERSAL

MANDERINO, Justice.

This is an appeal from an order holding an attorney, appellant Harold L. Randolph, in contempt of court. The contempt citation resulted from remarks made on behalf of his client, a defendant on trial for murder, by appellant during his closing argument to the jury. Appellant was originally ordered to pay a fine of $2,000, and in default of payment, was sentenced to serve thirty days in prison. Subsequently, the trial court entered a new order sentencing the appellant to pay a fine of $1,000, and in default of payment, to serve thirty days imprisonment. The court en banc later reduced the sentence to $500. The court en banc's order said nothing concerning imprisonment in default of payment of the fine. This appeal followed.

Just prior to appellant's closing argument in the murder trial of David Cherry, the assistant district attorney reported to the trial judge in the robing room that appellant intended to tell the jury that the trial court's legal rulings had been prejudicial to the defendant. The trial judge told appellant that he "should not do this." Appel-

lant's closing argument comprises sixty pages of the written transcript. The prosecution in its brief contends that the following remarks, interspersed throughout these sixty pages as indicated, are sufficient to sustain the contempt conviction:

"Now, we had a lot of interruptions here, interjections and superimpositions of opinions (N.T. 29); and,

Would you want to be moved along in the judicial process toward a conviction on this type of evidence where there are admittedly mistakes . . . (N.T. 32); and,

. . . justice requires the proper administration. The proper administration is that the defendant charged with a crime would get a fair trial . . . (N.T. 33); and,

The Judge has cut me off from . . . (N.T. 44); and,

I stand by what I say. (In response to the Court's admonition) (N.T. 45); and,

There is supposed to be a referee. (Implying the Court was unfair) (N.T. 46); and,

Protect(ing) the rights of my client . . . has been an arduous and burdensome situation in here. (N.T. 46); and,

Now, I will take the brunt of anything that has to happen to me because I am protecting this man's liberty and I will not be intimidated by anyone because I am sworn to that duty (N.T. 47); and,

I have to be subjected and handled like a little boy in here because I am trying to stand up for what is right. (N.T. 47); and,

It matters not what happens to me . . . (N.T. 47); and,

If I were fainthearted I would succumb and I shall not. (N.T. 48); and,

I will not be intimidated . . . (N.T. 56); and,

And I will not, I will not bow to anything that I feel . . . is doing damage to the great cause of justice that we all aspire. (N.T. 58)."

The prosecution also argues that appellant disobeyed an order of the court in the following colloquy:

"Now, would you want to be—put yourself in this man's seat. Would you want to be moved along in the judicial process toward a conviction on this type of evidence where there are admittedly mistakes—

THE COURT: May I interrupt. You may not ask the jurors to put themselves in the place of the defendant.

MR. RANDOLPH: If that is your ruling, sir.

THE COURT: The cases are legion on this. This is not my ruling.

MR. RANDOLPH: Well, now that the Court has said that, I would say to you that justice requires the proper administration. The proper administration is that the defendant charged with a crime would get a fair trial, not that I would put you in his position. But I would say to you, if you were in that position you would require a fair trial and you wouldn't want to be convicted on supposition, surmise and guesswork. This is what Item C–7 is, it is a piece of guesswork."

In *Bloom Discipline Case*, 423 Pa. 192, 223 A.2d 712 (1966), we pointed out that under the Canons of Professional Ethics:

"The lawyer owes 'entire devotion to the interest of the client, warm zeal in the maintenance and defense of his rights and the exertion of his utmost learning and ability,' to the end that nothing be taken or be withheld from him, save by the rules of law, legally applied. *No fear of judicial disfavor* or public unpopularity should restrain him from the full discharge of his duty. In the judicial forum the client is entitled to

the benefit of *any and every remedy* and defense that is authorized by the law of the land, and he may expect his lawyer to assert every such remedy or defense." (Emphasis in *Bloom.*)

While appellant's remarks may have been injudicious at times, considered in the context of the entire closing, and in light of an attorney's duty to zealously advocate his client's cause, those remarks are not sufficient to sustain the contempt conviction.

The order of the trial court should be reversed.

O'BRIEN and ROBERTS, JJ., join in this opinion.