368 A.2d 686

**COMMONWEALTH of Pennsylvania**

v.

**Richard Charles HAEFNER, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 20, 1976.

Decided Jan. 28, 1977.

Petition for Allowance of Appeal

Granted Sept. 19, 1976.

Pamela W. Higgins, Richard A. Sprague, Michael K. Simon, Philadelphia, for appellant.

John A. Kenneff, Asst. Dist. Atty., Lancaster, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY and MANDERINO, JJ.

## OPINION OF THE COURT

JONES, Chief Justice.

While on trial before a judge and jury for the crimes of involuntary deviate sexual intercourse and corruption

of minors, Richard Charles Haefner, appellant, testified that, during the ten hours of custody which preceded his preliminary arraignment, he was mistreated by the police who arrested and interrogated him. Roughly two hours of the interrogation consisted of the administration of a lie detector test to appellant. At the beginning of the trial, however, the trial judge ruled inadmissible, at sidebar, all polygraph evidence. *See Commonwealth v. Gee*, 467 Pa. 123, 354 A.2d 875 (1976); *Commonwealth v. Brooks*, 454 Pa. 75, 309 A.2d 732 (1973). Appellant was informed of this directive by his trial counsel, Mr. Heinly, and made no mention of the polygraph test in his direct testimony. The cross-examination which followed was aimed at attacking appellant's credibility by showing that, in the midst of the alleged police brutality, he made no real attempt to seek outside assistance from friends, family or counsel:

"Q: The question before you now is, did you ever complain to anybody at home concerning your treatment?

A: Yes, I believe I did.

Q: Whom did you complain to?

A: My mother.

Q: What did you tell her?

A: Gees, I don't recall . . . [S]he asked me if Henry should come down, and I said, no, no, don't send Henry down.

Q: Who's Henry?

A: Henry Haefner, my cousin, who is an attorney. He was the only attorney that I could think of, that I knew of in all of Lancaster. I never needed an attorney before for anything. And I was so ashamed or so embarrassed that they would even ask me questions like that, that I didn't want any family member to know that police were asking me questions about such a God awful thing like that . . . ." Notes of Testimony, pp. 539–540.

Appellant was then asked about his appearance before District Justice Joseph Lees:

Q: After you were in there all these hours and you were finally taken before Justice Lees, did you make any complaint to Justice Lees about the way you were treated?

A: Should I answer that?

[By Mr. Heinly]: Yes.

A: Yes, I did.

Q: Who was present, when you made these complaints?

A: Sergeant Snyder and Justice Lees and Henry Haefner and me, and Cadet McMullen was in the room at the same time.

Q: How about Crump, was he there?

A: He was not there.

Q: *And what complaint did you make to Lees?*

A: *I complained to Lees that if I, that I had agreed to take a lie detector test from Detective Jan Walters and Detective Walters told me, I passed the test. And we had an agreement that if I passed that test, they would not bring any charges, and they brought charges anyway. Now I'm sorry, I'm not supposed to mention that but I have to tell the whole truth. He did ask me, he did give me a lie detector test. Id.,* pp. 542–543. (Emphais added).

For this violation of the trial judge's ruling against the admission of polygraph evidence, appellant was found in contempt of court, fined five hundred dollars and sentenced to serve one month in prison.* This is an appeal

* Appellant was found to be in contempt at a hearing on the contempt citation held on February 5, 1976. The court denied appellant's Motion to Stay the one month prison sentence pending direct appeal to the Supreme Court, and appellant was immediately

of the contempt order brought pursuant to the Appellate Court Jurisdiction Act of July 31, 1970, P.L. 673, No. 223, art. II, § 202(5), 17 P.S. § 211.202(5). "In the exercise of our supervisory jurisdiction, this Court has the unquestioned authority to review a finding of contempt and to affirm, reverse, or modify the order of the court below." *Bloom Discipline Case,* 423 Pa. 192, 196, 223 A. 2d 712, 714 (1966); *Aungst Contempt Case,* 411 Pa. 595, 192 A.2d 723 (1963). Because we conclude, under the circumstances of this case, that the disputed action of the appellant in court was not contemptuous, we reverse the order of the court below.

██ In general, "one is guilty of contempt when his conduct tends to bring the authority and administration of the law into disrespect. The right to punish for such contempt is inherent in all courts." *Levine Contempt Case,* 372 Pa. 612, 618, 95 A.2d 222, 225 (1953), *cert. denied* 346 U.S. 858, 74 S.Ct. 72, 98 L.Ed. 371 (1953). But the mere showing of noncompliance with a court order or misconduct impeding the administration of justice is never sufficient, alone, to prove contempt. This last point was emphasized in a case involving criminal contempt, *In re Contempt of Myers and Brei,* 83 Pa.Super. 383, 387–88 (1924):

"But, as was well said in *People v. Kelly,* 24 N.Y. 74, '. . . the conduct charged as constituting the contempt must be such that some degree of delinquency or misbehavior can be predicated of it; for *if the act be*

imprisoned. On February 13, 1976, this appeal was filed and contemporaneously therewith, a Petition for Supersedeas was also filed requesting the Supreme Court to order the appellant released from prison pending determination of this appeal. A hearing on the petition was held before Mr. Justice Nix on February 17, 1976. At the conclusion of the hearing, Justice Nix granted the relief requested in the Petition for Supersedeas and appellant was released from prison, having already served almost half of his sentence.

*plainly indifferent or meritorious, or if it be only the assertion of the undoubted right of the party, it will not become a criminal contempt by being adjudged to be so . . . . [W]here the act is necessarily innocent or justifiable it would be preposterous to hold it a cause of imprisonment.' " (Emphasis added).*

See also *Schlesinger Petition*, 367 Pa. 476, 81 A.2d 316 (1951); *Commonwealth v. Sheasley*, 102 Pa.Super. 384, 157 A. 27 (1931).

 It was certainly preposterous, in the instant case, to charge this appellant with contempt, causing him to pay a substantial fine and be imprisoned. The record reveals that throughout the trial appellant was respectful toward the court. His demeanor was consistently proper and polite. Moreover, his good faith attempt to comply with the court's instruction is attested to by the fact that the appellant failed to introduce the polygraph evidence in his detailed and extensive direct testimony concerning the police interrogation. Only on cross-examination, with his liberty and reputation at stake and his credibility under fire, did appellant inject the forbidden evidence into the controversy. In such a setting, a layman like appellant could not possibly be expected to respond to the prosecutor's question with a calculated answer intended to deviate from what he contended to be the truth while preserving the integrity of the court's ruling. As we observed in *Commonwealth v. Fletcher*, 441 Pa. 28, 32, 269 A.2d 727, 730 (1970), "we cannot expect a layman to interpret questions as if he were an attorney." Appellant's response demonstrated awareness of the court's evidentiary ruling but absolutely no disrespect for the court's authority. Appellant understood his primary obligation as witness to be "to tell the whole truth." Surely, he was not mistaken in that belief. The words of the late Mr. Chief Justice Charles Alvin Jones are as appropriate a means of disposing of this criminal contempt or-

der as they were in the case of *Commonwealth v. Lofton,* 389 Pa. 273, 280, 133 A.2d 203, 206 (1957):

"How, possibly could a witness be held in contempt for refusing to testify to what he insists is untrue and is willing to testify to what he affirms to be the truth."

Order reversed.

## ORDER

AND NOW, this 28th day of January 1977, the order of the Court of Common Pleas of Lancaster County, Criminal Division, finding appellant, Richard Charles Haefner, in contempt and sentencing him to pay a fine of five hundred dollars and serve one month in prison is reversed.

NIX, J., did not participate in the consideration or decision of this case.

POMEROY, J., filed a dissenting opinion.

POMEROY, Justice (dissenting).

The Court in today's opinion disregards the findings of the trial court in connection with the contempt charge, asserts that that charge "was certainly preposterous" (opinion of the Court, *ante* at 688), and substitutes its own judgment that this appellant intended "absolutely no disrespect for the court's authority." This, in my view, is an unwarranted usurpation of the trial judge's role in the conduct of trials before him, and I must, therefore, dissent.

There was here a clear direction by the trial judge to counsel at the beginning of trial "that there be no reference to a lie detector test . . . [nor shall] the results thereof be mentioned in the conduct of the trial." [N.T. 8–9]. See *Commonwealth v. Gee,* 467 Pa. 123, 354 A.2d 875 (1976). It is conceded that this instruction .

was known to defendant Haefner; his own testimony makes this clear:

> "Q. And what complaint did you make to Lees [District Justice of the Peace at the preliminary hearing]?
>
> "A. I complained to Lees that if I, that I had agreed to take a lie detector test from Detective Jan Walters and Detective Walters told me, I passed the test. And we had an agreement that if I passed the test, they would not bring any charges, and they brought charges anyway. Now I'm sorry, I'm not supposed to mention that but I have to tell the whole truth. He did ask me, he did give me a lie detector test." Notes of Testimony, p. 11.

In *Commonwealth, D. E. R. v. Pennsylvania Power Co.*, 461 Pa. 675, 337 A.2d 823 (1975), a case cited by the majority, it is stated that "[i]t is hornbook law that contempt is any conduct that 'brings into disrespect the authority of a court, . . . *willful disregard or disobedience to the court's orders,* . . . conduct which tends to impede the due administration of justice' . . . ." *Id.* at 687, 337 A.2d at 829 (emphasis added); see also *Commonwealth v. Cherry*, 467 Pa. 160, 354 A.2d 894, 895 (1976) (opinion in support of affirmance). The majority completely ignores the fact that following the citation for contempt (which was imposed after the jury had retired for its deliberation) the trial court conducted a hearing thereon, and found as fact that the quoted reference to the result of the polygraph test was wilful disobedience of the court's order; that the reference to the test was interjected by Haefner solely to bolster his defense. This finding was supported, in part, by the testimony at the contempt hearing that Haefner had not, in fact, made any complaint before Justice of the Peace Lees.[1] Since the finding of wilful disobedience is

---

1. The following portion of the opinion of the trial court is pertinent:

 "At this hearing [on the contempt citation] the Commonwealth presented testimony that the defendant had not in fact made

supported by ample evidence, there is no reason for this Court to disturb it on review. Cf. *Levine Contempt Case*, 372 Pa. 612, 620, 95 A.2d 222, 226 (1953).

The trial judge was present and observed the demeanor of the contemnor both at trial and at the subsequent contempt hearing. He rejected the argument that the answer given by Haefner was the only one which could have been given. The trial court's opinion explains at some length the reasons for his conclusion "that the defendant knew how [to respond] but that he did not want to." The opinion also describes the interruption of the court proceeding which was caused by the contumacious answer. We should be slow to ignore the reasoned basis of a trial court's action in a case such as this. Hence this dissent.[2]

any complaint at the hearing before Justice Lees. One police officer was in the room the entire time and others were there most of the time. Their testimony was positive and firm. We find the testimony to be credible and conclude therefrom that the defendant's testimony that he had made a complaint at the arraignment was incorrect. We have no doubt that the defendant has complained about the lie detector test and the non-use of it on numerous occasions, but the testimony of the police officers has convinced us beyond a reasonable doubt that the occasion of the arraignment was not one of the times when he voiced a complaint. Having concluded that he made no complaint, as we do, we thereupon conclude that the sole purpose of the answer given by the defendant was to bring the lie detector test to the attention of the jury in the hope that it would benefit his defense." [Record, 16a].

2. No claim is made by appellant that the penalty which the court imposed was unduly harsh; the only claim asserted is that the conduct of appellant was not contemptuous.