Karen **PRETOT (Leonhard), Appellant.**

v.

**Daniel PRETOT, Appellee.**

**No. 94–CA–000125–MR.**

Court of Appeals of Kentucky.

Sept. 15, 1995.

Harry P. Hellings, Jr., Dean A. Pisacano, Jeff C. Seaman, Hellings & Pisacano, Covington, for appellant.

Carl Turner, Jolly & Blau, P.S.C., Cold Spring, for appellee.

Before COMBS, JOHNSON and SCHRODER, JJ.

JOHNSON, Judge:

Karen M. Pretot (now Leonhard) appeals from an order of the Campbell Circuit Court entered on December 9, 1993, which overruled her objections to the master commis-

sioner's report entered November 4, 1993, and incorporated said report into its order. We affirm.

This case follows in a long line of court activity. In order to put the matter into context, we will thoroughly set forth the history of the litigation. Daniel Pretot (Daniel) and Karen M. Pretot (now Leonhard) (Karen) were divorced by decree entered by the trial court on November 1, 1982. Karen was awarded custody of their two children, Christopher and Elisha. Daniel was ordered to pay Karen child support in the amount of $25.00 per week per child.

On November 11, 1986, upon Karen's motion, the trial court entered an order increasing Daniel's child support obligation to $60.00 per week per child. The trial court also found Daniel to be in arrears in the amount of $810.00 and increased his child support payments by $5.00 per week until the arrearage was paid in full. On December 11, 1986, Karen filed a motion for Daniel to show cause why he should not be held in contempt for failing to pay his child support, which was granted on February 2, 1987. The trial court subsequently ordered that Daniel be held in contempt of court and a bench warrant be issued for his arrest for failing to pay his child support.

On April 19, 1989, Daniel filed a motion to quash the bench warrant, to change custody of Elisha from Karen to himself, to defer jurisdiction concerning child support to Florida where he was currently residing, and to modify that part of the decree of dissolution concerning the payment and maintenance of medical bills to conform to the agreement of both parties. Karen filed her response on May 8, 1989.

On June 16, 1989, Karen and Daniel tendered an agreed order which was entered by the court. The order designated Elisha's summer vacation to be spent with Daniel and withdrew the bench warrant for Daniel's arrest. The trial court subsequently denied Daniel's motion for a change of custody.

On August 15, 1990, Karen and Daniel tendered an agreed order modifying the visitation order for Elisha which was entered by the court. On September 5, 1990, Karen filed a motion for contempt of court alleging that Daniel had failed to abide by the terms of the agreed order. A hearing on the matter was held on September 27, 1990, at which Daniel and/or his counsel failed to appear. Daniel was held in contempt of court and ordered to return Elisha to Kentucky and to deliver him to Karen.

On November 14, 1990, Karen filed a motion to suspend Daniel's visitation with Elisha, which was granted on November 30, 1990. Then, almost one year later on October 29, 1991, the parties tendered another agreed order, which the court entered, awarding Daniel full care, custody and control of Elisha and granting Karen reasonable visitation.

The record is silent until September 15, 1993, nearly two years later, when Karen filed a motion for Daniel to show cause why he should not be held in contempt of court for violation of a court order entered by the Polk County, Florida Circuit Court. Further, Karen requested the trial court to set child support payments to her according to Kentucky guidelines.[1]

On November 4, 1993, the master commissioner filed his report finding that the Campbell Circuit Court did not have jurisdiction to hold Daniel in contempt of court and impose sanctions for violating the Polk County, Florida Circuit Court's order. Further, the master commissioner recommended that Daniel pay Karen $50.00 per week in child support for Elisha, to be retroactive to September 15, 1993, the date Karen filed her motion. Karen filed objections which the trial court overruled and subsequently adopted the master commissioner's report. This appeal followed.

On appeal, Karen argues (1) the trial court erred in holding that it could not modify or enforce the Polk County, Florida Circuit

1. Apparently, Karen regained custody of Elisha through the Polk County, Florida Circuit Court. The record on appeal does not contain a copy of the order and neither party included same in their briefs.

Court's order; and (2) the trial court erred in making the award of child support retroactive to the date she filed her motion instead of retroactive to the date she received custody of Elisha.

■ In support of her first argument, Karen relies on *White v. Bennett*, Ky.App., 553 S.W.2d 845 (1977). Daniel, on the other hand, contends, and we agree, that *White* does not apply because the issue is not whether the trial court can *modify or enforce* the Florida circuit court's order, but whether a Kentucky circuit court possesses the authority to hold him *in contempt* of the Florida circuit court's order.

Although we have been unsuccessful in locating any Kentucky case law directly on point, numerous other courts have considered this question and held that only the court contemned has jurisdiction to punish the contemner. *Culpepper v. State*, 516 So.2d 485 (Miss.1987); *Grotnes v. Grotnes*, 338 So.2d 1122 (Fla.1976); *Ex parte Alvarado*, 543 S.W.2d 144 (Tex.App.1976); *Ex parte Houston v. Hennessey*, 534 S.W.2d 52 (Mo.App. 1975); *Carlson v. Johnson*, 327 S.W.2d 704 (Tex.App.1959); *Commonwealth v. Lofton*, 389 Pa. 273, 133 A.2d 203 (1957).

In *Grotnes, supra*, the parties were divorced in the state of Georgia. An agreement between the parties, providing for alimony and child support, was made a part of the divorce judgment. The ex-husband fell behind in his payments. The Georgia court issued an order finding the ex-husband to be in arrears and holding him in contempt. Subsequently, the same Georgia court amended its order two years later and entered a money judgment against the ex-husband in favor of the ex-wife in the amount of $21,875.00. Meanwhile, the ex-husband had moved to Florida.

The ex-wife subsequently filed suit to establish the Georgia judgment as a Florida judgment. A trial was held on the matter and the Florida court found the ex-husband to be in contempt of the Georgia court's prior orders for failure to pay the sum of $21,-875.00 and attorney's fees. The sheriff of Broward County, Florida, was ordered to arrest the ex-husband and place him in the Broward County, Florida jail until he paid said arrearage plus attorney's fees as ordered in the state of Georgia.[2] The ex-husband appealed and the Florida Court of Appeals reversed the trial court, stating:

> In effect appellant was found by the Florida court to have been in contempt of the Georgia court. At the time appellant was found in contempt there was no order of the Florida court which he had violated. As a general rule, the power to punish for contempt rests with the court contemned, and one court cannot punish a contempt against another court. *Graham v. State*, 144 So.2d 97 (Fla. 2d DCA 1962). The trial court's adjudication of contempt in this case was premature. There being no order of the Florida court that appellant pay alimony and child support, he was not in contempt of the Florida court. In this instance it was the Georgia court which was condemned, and it is beyond the power of the Florida court to punish for this contempt. However, once the Georgia judgment has been duly established in Florida, and appellant ordered by the Florida court to comply, a failure to comply would then be a violation of the Florida court's order for which appellant could then be held in contempt.

*Grotnes*, 338 So.2d at 1125–1126.

In the case at bar, the Campbell Circuit Court had jurisdiction over Elisha until it entered the agreed order in which Karen and Daniel agreed to a change of custody in October 1991. The record on appeal contains nothing until September 1993, when Karen filed the motion for contempt and provided no copy of the Florida court's order. Further, she made no attempt to establish the Florida judgment and order in Kentucky. Based upon the evidence of record and the persuasive foreign case law, we affirm the trial court.

**2.** Other issues were addressed at trial which are irrelevant to the case at bar.

Karen also contends the trial court erred when it held Daniel's child support obligation retroactive to the date that Karen filed her motion for support instead of the date she received custody of Elisha. She relies on *Lockard v. Lockard,* 314 Ky. 720, 237 S.W.2d 63 (1951), in support of her argument.

*Lockard, supra,* is a short but confusing case. The Court affirmed the trial court's award of support commencing the date on which the motion was filed, but curiously cites *Miles v. Miles,* 203 Ky. 431, 262 S.W. 576 (1924), for the rule that "an obligation imposed on [a party] by law, may be rendered retroactive to the time of the commencement of the obligation." *Lockard, supra* 237 S.W.2d at 63. *Miles, supra,* did clearly hold that a retrospective order of support which antedated the motion for support was proper since the effect of the order "was no more than a finding by the chancellor (sic) as to the amount of obligation that had accumulated against the father for the support of his child which in law and in morals he was bound to pay." *Miles, supra,* at 436, 262 S.W. 576. The holding in *Miles* is inconsistent with the result in *Lockard.*

However, upon the enactment of KRS 403.213(1) on July 13, 1990, the Legislature mandated that "[t]he provisions of any decree respecting child support may be modified *only* as to the installments *accruing subsequent to the filing of the motion* for modification (emphasis added)." *See Giacalone v. Giacalone,* Ky.App., 876 S.W.2d 616, 620 (1994). The trial court was correct in limiting the increase to the date the motion was filed.

The judgment of the Campbell Circuit Court is affirmed.

All concur.